IN THE UNITED STATES DISCTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

|  |  |  |
|---|---|---|
| ANGELA FOWLER,<br>Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. 3:14cv855 (HEH) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>Defendant. | ) ) ) ) | |

## REPORT AND RECOMMENDATION

On November 9, 2011, Angela Fowler ("Plaintiff") applied for Social Security Disability Insurance Benefits ("DIB") and, on November 30, 2011, for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), alleging disability from panic disorder, depression, anxiety, obesity, arthritis, fibromyalgia, hyperinsulinemia, hypothyroidism and sleep apnea, with an alleged onset date of July 24, 2011. The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration. An Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in assessing Plaintiff's residual function capacity ("RFC"). (Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem") (ECF No. 15) at 22-28.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the

parties' cross-motions for summary judgment, making the matter now ripe for review.[1] For the

reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF

No. 13) be DENIED, Plaintiff's Motion for Remand (ECF No. 14) be DENIED, Defendant's

Motion for Summary Judgment (ECF No. 16) be GRANTED and the final decision of the

Commissioner be AFFIRMED.

## I.     PROCEDURAL HISTORY

On November 9, 2011, Plaintiff filed an application for DIB and, on November 30, 2011,

Plaintiff filed an application for SSI with an alleged onset date of July 24, 2011. (R. at 192-93,

196-198.) The SSA denied these claims initially on December 30, 2011, and again upon

reconsideration on April 6, 2012. (R. at 82-87, 110-35.) At Plaintiff's written request, the ALJ

held a hearing on July 23, 2013. (R. at 34-62.) On August 1, 2013, the ALJ issued a written

opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under

the Act, because Plaintiff could perform work that existed in the national economy. (R. at 14-

33.) On October 21, 2104, the Appeals Council denied Plaintiff's request for review, rendering

the ALJ's decision the final decision of the Commissioner subject to review by this Court. (R. at

1-6.)

## II.     STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.*

---

[1]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (summarizing the ALJ's five step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the

regulations.  20 C.F.R. § 416.920(a)(4)(iii).  Between steps three and four, the ALJ must assess

the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant

can do despite her physical and mental limitations.  20 C.F.R. § 416.945(a).  At step four, the

ALJ assesses whether the claimant can perform her past work given her RFC.  20 C.F.R.

§ 416.920(a)(4)(iv).  Finally, at step five, the ALJ determines whether the claimant can perform

any work existing in the national economy.  20 C.F.R. § 416.920(a)(4)(v).

### III.    THE ALJ'S DECISION

On July 23, 2013, the ALJ held a hearing during which Plaintiff (represented by counsel)

and a VE testified.  (R. at 34-62.)  On August 1, 2013, the ALJ issued a written opinion, finding

that Plaintiff did not qualify as disabled under the Act.  (R. at 14-33.)

The ALJ followed the five-step evaluation process established by the Social Security Act

in analyzing Plaintiff's disability claim.  (R. at 19-29.)  At step one, the ALJ determined that

Plaintiff had not engaged in substantial gainful activity ("SGA") since Plaintiff's alleged onset

date.  (R. at 19.)  At step two, the ALJ determined that Plaintiff suffered the severe impairments

of fibromyalgia, asthma, obstructive pulmonary disease, obesity, an affective disorder, an anxiety

disorder and osteoarthritis of the bilateral knees.  (R. at 19.)  At step three, the ALJ determined

that Plaintiff did not have an impairment or a combination of impairments that met or equaled

the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at

20.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform light work as

defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to certain limitations.  (R. at 22.)

Plaintiff could never climb ladders, ropes, or scaffolds, and could only occasionally climb

stairs/ramps, balance, stoop, kneel, crouch and crawl.  (R. at 22.)  Plaintiff could only

occasionally tolerate exposure to irritants, such as fumes, odors, dusts, gases, poorly ventilated areas, and workplace hazards, such as unprotected heights and hazardous machinery. (R. at 22.) She could only perform simple, routine and repetitive tasks, in a low stress work setting with only occasional interaction with the public. (R. at 22.) Finally, Plaintiff could not work more than two hours at a time without at least a brief break. (R. at 22.)

At step four, the ALJ found Plaintiff incapable of performing any past relevant work. (R. at 27.) At step five, the ALJ determined that Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 28.) Therefore, Plaintiff did not qualify as disabled under the Act. (R. at 29.)

## IV.    ANALYSIS

Plaintiff, thirty-eight years old at the time of this Report and Recommendation, previously worked as a babysitter, a house cleaner, a registrar, a rental assistant, a sales cashier and a switchboard operator. (R. at 192, 228.) She applied for Social Security benefits, alleging disability from panic disorder, depression, anxiety, obesity, arthritis, fibromyalgia, hyperinsulinemia, hypothyroidism and sleep apnea, with an alleged onset date of July 24, 2011. (R. at 82.) Plaintiff's appeal to this Court alleges that the ALJ erred in not performing a function-by-function analysis, in failing to address Plaintiff's psychological deficiencies in formulating the RFC, in failing to include all of Plaintiff's physical limitations in formulating the RFC, and in failing to give great weight to certain treating physician's opinions. (Pl.'s Mem. at 22-28.) For the reasons set forth below, the ALJ did not err in his decision.

A.    The ALJ did not err by failing to perform a function-by-function analysis.

Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC by not performing a function-by-function analysis. (Pl.'s Mem. at 22.) Specifically, Plaintiff alleges that the ALJ

failed to analyze any conflicts among the opinions regarding Plaintiff's mental health. (Pl.'s

Mem. at 22-25.) Plaintiff's brief fails to make clear whether she assigns error to the ALJ's entire

analysis or merely his consideration of the inconsistencies in the record. Therefore, the Court

will review both.

In formulating Plaintiff's mental RFC, the ALJ considered four separate opinions,

including her psychiatrist Dr. Syng Seo, M.D., her licensed professional counselor Ms. Angela

Poythress, state agency psychologist Leslie Montgomery, Ph.D. and state agency psychologist

Dr. David L. Niemeier, Ph.D. (R. at 25-26.) The ALJ afforded little weight to Ms. Poythress'

opinion that included more mental limitations than the ALJ ultimately found in the RFC. (R. at

22, 25-26.) Instead, the ALJ gave great weight to the opinions of the state agency psychologists.

(R. at 26.) In adopting their opinions, he did not explicitly address the minor variations in their

opinions. (R. at 26.)

> 1. The ALJ performed the proper analysis in assessing Plaintiff's RFC.

Plaintiff argues that failing to address the variations resulted in a lack of a function-by-

function analysis. (Pl.'s Mem. at 22-25.) This deficient analysis, contends Plaintiff, constitutes

an error requiring remand. (Pl.'s Mem at 22.) The Court finds that the ALJ performed the

proper analysis in determining Plaintiff's RFC.

The SSA defines RFC as "an assessment of an individual's ability to do sustained work-

related physical and mental activities in a work setting on a regular and continuing basis. A

'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work

schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's

ability to perform sustained work activities in an ordinary work setting on a regular and

continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and

describe the maximum amount of each work-related activity that the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted). When assessing the claimant's RFC, "the ALJ must consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware including those not labeled severe at step two." *Mascio*, 780 F.3d 632 at 635 (quoting 20 C.F.R. § 416.945(a)(2)). The ALJ then uses this RFC determination in conducting step four to determine if Plaintiff can return to her past work.

Social Security Ruling 96-8p explains how adjudicators should assess a claimant's RFC. *Mascio*, 780 F.3d at 626. The ALJ must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id.* (citing SSR 96-8p). Only after the function-by-function analysis can the ALJ express the claimant's RFC in terms of the exertional levels of work — sedentary, light, medium, heavy and very heavy. *Id.* (citing SSR 96-8p). The ALJ must include "a narrative discussion describing how the evidence supports each discussion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)" when analyzing a claimant's RFC. *Id.* (citing SSR 96-8p).

Here, the ALJ met the requirements of Social Security Ruling 96-8p by including a narrative discussion of the evidence that he reviewed. The ALJ discussed Plaintiff's hearing testimony and her mother's third-party function report, both of which demonstrate Plaintiff's ability to care for herself and perform daily tasks. (R. at 23.) The ALJ also reviewed Dr. Seo's treatment notes and explained how the notes supported the RFC assessment. (R. at 24.) Additionally, the ALJ explained how Ms. Poythress' treatment notes offered further support for the RFC assessment. (R. at 24-26.) The ALJ went on to explain that the record as a whole indicates that Plaintiff has functioned relatively well since her onset date. (R. at 25.)

7

Substantial evidence supports the ALJ's decision regarding Plaintiff's functionality.  On

September 27, 2010, Plaintiff saw psychiatrist Dr. Seo and indicated that medication reduced her

panic attacks from occurring every day to once or twice per week.  (R. at 315.)  Dr. Seo opined

that Plaintiff had a Global Assessment of Functioning ("GAF") score[2] of 55.  (R. at 317.)  On

October 25, 2010, Plaintiff reported to Dr. Seo a decrease in anxiety and panic attacks, with a

depression level range of five to eight.  (R. at 318.)  Dr. Seo described Plaintiff as calm and

relaxed, with a mildly depressed mood and a full range of affect.  (R. at 318.)

On January 26, 2011, Plaintiff returned to Dr. Seo.  (R. at 320.)  She reported having a

depression level of five with a decreased fear of her car blowing up.  (R. at 320.)  Dr. Seo

observed that Plaintiff appeared calm and cooperative, with a normal mood and a full range of

affect.  (R. at 320.)  On July 13, 2011, Plaintiff again reported to Dr. Seo a decrease in her

anxiety and panic attacks with her current medication.  (R. at 321.)  Dr. Seo observed that

Plaintiff appeared calm and cooperative, with a less anxious mood and full range of affect.  (R. at

321.)  On May 23, 2012, Plaintiff returned to Dr. Seo, indicating that she had no complaints and

had gone two weeks without a panic attack.  (R. at 327.)  Dr. Seo again observed that Plaintiff

appeared calm and pleasant, with normal speech and clear thoughts.  (R. at 327.)

On August 9, 2012, Plaintiff saw Ms. Poythress, a licensed professional counselor.  (R. at

331.)  Ms. Poythress assessed Plaintiff's GAF at 60.  (R. at 331.)  Ms. Poythress noted that

---

2       The GAF represents a numeric scale (0 through 100) used by mental health clinicians and physicians to rate the social, occupational and psychological functioning of adults.  AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000).  Scores ranging from 51 to 60 indicate moderate symptoms or moderate difficulty in social, occupational or school functioning.  *Id.*  Notably, the latest version of the Diagnostic and Statistical Manual of Mental Disorders ("DSM") has dropped the use of GAF scores, finding that their use faces criticism due to a "conceptual lack of clarity," and "questionable psychometrics in routine practice."  AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013).

Plaintiff appeared articulate and interactive. (R. at 332.) While Ms. Poythress indicated that Plaintiff had a major mental disorder, she did not meet the requirements for a major mental illness. (R. at 335.)

The evaluations of the state agency psychologists also provide support for the ALJ's findings. On December 30, 2011, state psychologist Leslie E. Montgomery completed a mental RFC assessment. (R. at 90-91.) Dr. Montgomery found that Plaintiff had moderate limitations with understanding, remembering and carrying out detailed instructions, maintaining attention and concentration for extended periods, and performing activities within a schedule. (R. at 90-91.) These limitations also extended to her ability to maintain regular attendance, remain punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (R. at 90-91.) Socially, Dr. Montgomery found Plaintiff had moderate limitations regarding interacting appropriately with the general public, maintaining socially appropriate behavior, adhering to basic standards of neatness and cleanliness, and responding appropriately to changes in the work setting. (R. at 90-91.)

However, Dr. Montgomery determined that Plaintiff had no significant limitations with remembering locations and work-like procedures, understanding, remembering and carrying out very short simple instructions, sustaining an ordinary routine without special supervision or working in coordination with or in proximity to others without suffering distractions. (R. at 90-91.) Plaintiff also had no significant limitations with making simple work-related decisions, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without distracting them or exhibiting behavioral extremes. (R. at 90-91.) Plaintiff had no significant

limitations with her awareness of normal hazards and taking precautions, travelling in unfamiliar places or using public transportation, or setting realistic goals or making plans independent of others. (R. at 90-91.) Dr. Montgomery also found that Plaintiff had social interaction and adaption limitations, as well as moderate difficulties maintaining social functioning and maintaining concentration, persistence and pace, but only mild restrictions on the activities of daily living. (R. at 86, 90-91.) Ultimately, Dr. Montgomery found that Plaintiff could perform simple, routine tasks. (R. at 86.)

On March 30, 2012, state psychologist David L. Niemeier reviewed Plaintiff's treatment records and reached largely the same determinations, although Dr. Niemeier found fewer limitations. (R. at 90-91, 119-120.) A subsequent portion of this Report & Recommendation provides a more appropriate space to analyze the effect of these differences. For the present purposes, it suffices to note that Dr. Niemeier's opinion provides support for the ALJ's decision.

Thus, the treatment notes from Plaintiff's treating sources and the opinions of the state psychologists demonstrate that substantial evidence supports the ALJ's formulation of Plaintiff's RFC. Yet, despite this ample evidence, and the ALJ's review and explanation of his reliance on it, Plaintiff contends that because some evidence in the record conflicts, the ALJ could not have conducted a proper function-by-function analysis. (Pl.'s Mem. at 22-24.) This alleged failure, according to Plaintiff, necessitates a remand. (Pl.'s Mem. at 25.)

Even if the ALJ had failed to conduct a function-by-function analysis, it would not necessarily require a remand. In *Mascio*, the Fourth Circuit rejected a *per se* rule requiring remand after the ALJ's failure to conduct a function-by-function analysis. 780 F.3d at 636. Instead, the Fourth Circuit explained that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence

in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (internal citations omitted). The ALJ's analysis here does not frustrate this Court's ability to conduct a meaningful review.

2. The conflicts in the record do not create the need for a remand.

Plaintiff contends that the ALJ, as in *Mascio*, failed to account for conflicting opinions by the state agency psychiatrists that he relied upon in forming the RFC, thus thwarting a meaningful review. (Pl.'s Mem. at 22.) In *Mascio*, the Fourth Circuit noted that the record included conflicting RFC assessments, but found that the ALJ failed to address one assessment and failed to identify the appropriate weight for the other. *Id.* at 637. Specifically, the Fourth Circuit stated:

> These assessments conflict with each other. Exhibit 12F states that Mascio can lift 50 pounds, but Exhibit 20F limits her to 20 pounds. Yet the ALJ's findings are more consistent with Exhibit 20F, about which he said nothing. To make matters worse, the ALJ's discussion of Exhibit 12F trails off right where he was poised to announce the weight he intended to give it.

*Id.*

In the present case, the ALJ specifically recognized both RFC assessments by the state agency psychiatrists and afforded the opinions great weight. (R. at 26.) Plaintiff contends that the conflicting nature of the two opinions made this impossible. (Pl.'s Mem. at 22.) An examination of the RFC assessments by the two state agency psychiatrists primarily reveals consistencies, except for two of the twenty areas of mental functions. (R. at 90–91, 119–20.) With respect to the two differences, Dr. Niemier found no significant limitations, but Dr. Montgomery found moderate limitations in Plaintiff's ability to: (1) perform activities within a schedule, maintain regular attendance and be punctual with customary tolerances; and (2) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.

The ALJ included these two categories in which the inconsistencies fell and resolved them in favor of more limited functionality. (R. at 26.) Thus, unlike in *Mascio* where the ALJ seemingly adopted the finding of one RFC assessment without referencing conflicting assessments in the record, the ALJ in this case not only explained his reliance on the state agency psychiatrists' RFC assessments, but also resolved any inconsistencies between them. (R. at 26.) Additionally, because the ALJ resolved the inconsistencies in favor of the more limited functionality, Plaintiff cannot claim the inconsistent assessments resulted in prejudice to her. Consequently, Plaintiff's argument that the ALJ's failure to explicitly address the conflict in the opinions that he relied on lacks merit and the ALJ did not err.

B. The ALJ did not err in formulating the RFC, because he properly addressed Plaintiff's psychological deficiencies.

Plaintiff argues that the ALJ erred in failing to include all of Plaintiff's psychological restrictions. (Pl.'s Mem. at 26.) Specifically, Plaintiff contends that the ALJ failed to include Plaintiff's pace, concentration or persistence limitations in the RFC or the hypothetical posed to the VE. (Pl.'s Mem. at 26.) According to the Plaintiff, the ALJ attempted to combine all of Plaintiff's mental limitations into a single limitation that Plaintiff could only complete simple and repetitive tasks. (Pl.'s Mem. at 27.)

The ALJ formulated a mental RFC that limited Plaintiff to simple, routine and repetitive tasks. (R. at 22.) The ALJ further limited Plaintiff to a low stress work environment, only occasional interactions with the public, and work that required no more than two hours at a time without at least a brief break. (R. at 22.) In the first hypothetical posed to the VE, the ALJ limited the hypothetical employee to simple, routine and repetitive tasks, and an inability to work more than two hours without at least a brief break. (R. at 49.) The ALJ then added further social functioning limitations, including the need for a low stress work environment and only

12

occasional interaction with the public. (R. at 51.)  The VE described the jobs available to an individual with those limitations. (R. at 50-51.)  The ALJ also elicited testimony from the VE that the jobs described did not require an individual to tolerate a crowd of more than ten people. (R. at 51.)  Therefore, the ALJ, in his decision, found Plaintiff capable of performing work that exists in significant numbers in the national economy. (R. at 28-29.)  The Court finds that the ALJ did not err in this finding at the fifth step of the evaluation.

At the fifth step, the burden shifts to the Commissioner to show that, considering the claimant's age, education, work experience and RFC, the claimant has the capacity to perform other work available in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146 n. 5).  The Commissioner can carry her burden in the final step with the testimony of a VE. When a VE testifies, the ALJ poses hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments.  *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).  This description allows the VE to offer testimony about any jobs existing in the national economy that the claimant can perform. *Id.*  Only when the hypothetical posed represents all of the claimant's substantiated impairments does the testimony of the VE become "relevant or helpful." *Id.*  If the claimant cannot engage in SGA,[3] the ALJ must find the claimant disabled and thus entitled to benefits.  20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

Plaintiff argues that the ALJ's hypothetical contravenes *Mascio*. (Pl.'s Mem. at 26.)  In *Mascio*, the Fourth Circuit found that a hypothetical limiting a claimant to simple routine tasks or unskilled labor did not account for the claimant's limitations in concentration, persistence and

---

3      Substantial gainful work activity involves doing significant physical or mental activities for pay or profit, regardless of the actual realization of a profit.  20 C.F.R. § 404.1572(a)-(b).

pace. 730 F.3d at 638. Here, the ALJ used a similar hypothetical. However, the *Mascio* court went on to excuse the exclusion when the ALJ found that the concentration, persistence, or pace limitation did not affect the claimant's ability to work and explained such finding. *Id.* In the present case, the ALJ's explanation renders any exclusion of mental limitations appropriate. The hypothetical included those mental limitations supported by the record.

The ALJ explained that Plaintiff's mental limitations did not preclude her from working. (R. at 25.) Specifically, the ALJ referenced Plaintiff's treatment notes, discussed above, indicating how well her anxiety disorder, depression, mood and affect had responded to treatment. (R. at 25.) The ALJ further explained how these treatment notes, in addition to Plaintiff's GAF score of 60, showed Plaintiff's ability to function relatively well since her onset date. (R. at 25.) The ALJ considered Plaintiff's mental disabilities and concluded that the record failed to establish that Plaintiff's limitations precluded her from working. (R. at 25.) This finding adequately explains why the ALJ did not explicitly include Plaintiff's mental limitations of pace and persistence in the hypothetical.

Though he did not explicitly use the terms "pace" or "persistence" in the limitations, the ALJ properly included Plaintiff's psychological deficiencies in the hypothetical posed to the VE, despite Plaintiff's argument to the contrary. (Pl.'s Mem. at 26–27.) Specifically, the ALJ's hypothetical described a worker who could not work more than two hours at a time without a break. (R. at 49.) The ALJ then further limited the work to a low stress setting, defined as having only occasional independent decision-making and occasional changes in the workplace setting. (R. at 51.) Furthermore, the work could involve only occasional interaction with the public. (R. at 51.) But, Plaintiff's argument ignores these further limitations posed to the VE in the hypothetical. (Pl.'s Mem. at 26–27.) And, these limitations mirror those found by the ALJ in

the RFC assessment.  (R. at 22.)  Substantial evidence, examined above, supports both the RFC

determination and the hypothetical posed to the VE.  Therefore, the ALJ properly addressed

Plaintiff's psychological deficiencies and did not err.

     C.   The ALJ did not err in assessing Plaintiff's physical RFC.

     Plaintiff argues that the ALJ erred by not including all of her physical impairments and

finding her capable of light duty work.  (Pl.'s Mem. at 27-28.)  Specifically, Plaintiff argues that

her obesity renders the ALJ's determination that she could perform light work irrational.  (Pl.'s

Mem. at 28.)  Plaintiff offers no specific citation to the record to support this argument.  (Pl.'s

Mem. at 28.)

     The ALJ determined that Plaintiff could perform light work without the ability to ever

climb ladders, ropes or scaffolds.  (R. at 22.)  He further limited her physical RFC to an

occasional ability to climb stairs or ramps, balance, stoop, kneel, crouch and crawl.  (R. at 22.)

In determining this RFC, the ALJ explained in detail his review of the record and the support it

provides for the RFC.  (R. at 23-25.)

     The ALJ relied on Plaintiff's treatment record and findings to discredit her statements

regarding the severity of her limitations.  (R. at 25.)  The ALJ noted the routine, conservative and

unremarkable nature of Plaintiff's treatment history.  (R. at 25.)  Indeed, Plaintiff had received

no treatment for her physical impairments in over twenty months.  (R. at 25.)  The treatment

record also lacked treatment by an orthopedist, pulmonologist, rheumatologist or pain

management specialist.  (R. at 25.)  She takes no pain medications nor utilizes any assistive

devices prescribed to her.  (R. at 25.)

     Plaintiff's treatment record supports the ALJ's determination that Plaintiff can perform

light duty work.  On September 18, 2012, Plaintiff saw Zulfiqar Turk, M.D. for a physical

examination and complained of pain and stiffness, joint pain and swelling, muscle pain, anxiety, depression and memory loss. (R. at 349-50.) Dr. Turk noted that Plaintiff had normal strength in both upper and lower extremities, normal gait and intact sensation. (R. at 351.) Furthermore, Plaintiff's physical examinations consistently showed no clubbing or edema in her extremities. (R. at 301, 305, 308.) In September 2011, Plaintiff complained of swelling in her knees. (R. at 302.) However, after the swelling resolved, she did not complain of any more swelling or any difficulty ambulating. (R. at 294–313, 349–354.) Additionally, treatment notes from a September 2012 neurologist visit reveal that Plaintiff had normal muscle strength in her upper and lower extremities without any gait abnormalities. (R. at 351.) After reviewing the Plaintiff's physical examination records, the ALJ found that Plaintiff physically could perform light duty work.

Furthermore, the ALJ relied on the state agency physicians' opinions that incorporated Plaintiff's obesity. (R. at 26.) In making their determinations, both physicians considered Plaintiff's severe obesity diagnosis. (R. at 86, 114.) Despite her obesity, both physicians found Plaintiff capable of performing light work. (R. at 93, 121.) The ALJ afforded both of these opinions great weight, because he found them balanced, objective and consistent with the credible evidence of record. (R. at 26.) Thus, Plaintiff's argument that the ALJ neglected to consider her obesity must fail.

D. The ALJ did not err in failing to afford great weight to the opinions of Plaintiff's treating physicians.

Plaintiff contends that the ALJ erred in not giving great weight to Plaintiff's treating sources, specifically Dr. Seo and Ms. Poythress. (Pl.'s Mem. at 28-29.) Especially in the case of mental health, Plaintiff argues that the opinion of a treating source deserves significantly more weight than that of a doctor conducting a records review. (Pl.'s Mem. at 29.)

The ALJ considered the opinion of Ms. Poythress, but assigned it little weight. (R. at 25-26.) He also considered a co-signed opinion of Dr. Seo and Ms. Poythress that claimed that Plaintiff could not work. (R. at 26.) This opinion received little weight as well. (R. at 26.) Instead, the ALJ gave great weight to the DDS medical consultants. (R. at 26.) In doing so, the ALJ sufficiently explained his reasoning in giving the DDS medical consultants' opinions greater weight than the treating sources' opinions. (R. at 25-26.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's provided medical records and any medical evidence resulting from consultative examinations and ordered medical expert evaluations. 20 C.F.R. §§ 404.1512(a)-(e), 404.1527, 416.912(a)-(e), 416.927. When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that show consistency with each other, then the ALJ makes a determination based on that evidence. 20 C.F.R. §§ 404.1520b(a), 416.920b(a). If, however, the medical opinions conflict internally with each other or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-(6), (e), 416.927(c)(2)-(6), (e).

Under the applicable regulations and case law, the ALJ must give a treating source's opinion controlling weight if it has support from medically acceptable clinical and laboratory diagnostic techniques and does not conflict with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when

17

the source opines on the ultimate issue of the claimant's disability for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion conflicts with other evidence or when it otherwise does not have strong support. 20 C.F.R. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4),(d).

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine whether a claimant meets the definition of disabled under the Act. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Although the regulations explicitly apply these enumerated factors only to treating sources, those same factors may apply in evaluating opinion evidence from "other sources." SSR 06-03p.

     1.   The ALJ did not err by not giving Dr. Seo's opinion controlling weight.

In this case, the ALJ gave no treating source controlling weight and had to reconcile opinions from several different sources, including Dr. Seo. Dr. Seo opined that Plaintiff could not work at any level due to her depression and anxiety. (R. at 355.) After reviewing Dr. Seo's treatment notes, the ALJ afforded Dr. Seo little weight, because the notes lacked consistency with Dr. Seo's ultimate opinion that Plaintiff could not work. (R. at 26.) The ALJ found that the longitudinal record, including the treatment notes, did not support the opinion. (R. at 26.)

Substantial evidence supports the ALJ's decision, because Dr. Seo's treatment notes did not indicate an inability to work. On September 27, 2010, Plaintiff reported to Dr. Seo a

decrease in panic attacks from every day to twice a week. (R. at 315.) On October 25, 2010,

Plaintiff reported a decrease in anxiety. (R. at 318.) On January 26, 2011, Plaintiff reported her

depression scale as a five, down from a five-to-eight rating during previous appointments. (R. at

315, 318, 320.) On November 30, 2011, Dr. Seo noted that Plaintiff had a bright affect. (R. at

322.) Throughout her visits with Dr. Seo from 2011 to 2013, Plaintiff appeared calm and

cooperative, with normal mood, normal speech and clear thoughts. (R. at 320-323, 325, 327,

329, 336, 338.)

      Additionally, Plaintiff testified during the July 23, 2013 hearing that the medication

helped with her depression. (R. at 42.) She further testified that other treatments recommended

by her counselor and treating psychologist helped as well. (R. at 43.) Therefore, substantial

evidence supports the ALJ's decision not to afford great weight to Dr. Seo's opinion.

         2.   The ALJ did not err by not giving controlling weight to Ms. Poythress'
            opinion.

      Plaintiff also argues that the ALJ failed to make the appropriate analysis to determine the

weight given to Ms. Poythress' opinion. (Pl.'s Mem. at 29.) Defendant argues that the ALJ

correctly afforded little weight to Ms. Poythress' opinion. (Def.'s Mem. at 23.)

      The ALJ properly afforded Ms. Poythress' opinion little weight, because she does not

qualify as a treating physician entitled to controlling weight. Under the regulations, only an

"acceptable medical source" may qualify as a treating source that offers an opinion entitled to

controlling weight. SSR 06-03p. Acceptable medical sources include licensed physicians,

licensed or certified psychologists and certain other specialists, depending on the claimed

disability. 20 C.F.R. §§ 404.1527(a), 416.913(a). The regulations do not include counselors

such as Ms. Poythress in the list of acceptable medical sources. *Id.*

The regulations also provide for the consideration of opinions from "other sources," including nurse-practitioners, physician's assistants or therapists. 20 C.F.R. §§ 404.1513(d), 416.913(d).[4] However, these non-acceptable medical sources do not command controlling weight in the same manner as acceptable medical sources. *Id.* And, the reviewing court should leave untouched an ALJ's decision regarding weight afforded a medical opinion unless the ALJ failed to give sufficient reason for the weight afforded. 20 C.F.R. § 404.1527(d).

Here, the ALJ provided sufficient reasoning for affording Ms. Poythress' opinion little weight. He identified Ms. Poythress as a non-acceptable medical source. (R. at 26.) Additionally, the ALJ found that Ms. Poythress merely adopted Plaintiff's allegations without balance or objectivity. (R. at 26.) In doing so, she formed an opinion inconsistent with Plaintiff's testimony at the hearing or her own treatment notes. (R. at 26.) Specifically, the treatment notes indicate that Plaintiff's medications worked, Plaintiff could function well with a GAF score of 60, and had clear thoughts, normal speech and no significant mood, memory or attention/concentration difficulties. (R. at 26, 314-380.) Therefore, sufficient evidence supports the ALJ's decision to afford little weight to Ms. Poythress' opinion, a decision properly explained by the ALJ.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, Plaintiff's Motion for Remand (ECF No. 14) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 16) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

---

[4]     The regulations detail that "other sources" include medical sources that do not receive consideration as "acceptable medical sources" under 20 C.F.R. §§ 404.1513(a) and 416.913(a). The given examples do not form an exhaustive list.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Henry E. Hudson and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error**.

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: October 13, 2015

21