IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| ANGELA FOWLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:14cv855–HEH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |

[Stamp: DEC - 9 2015 CLERK, U.S. DISTRICT COURT RICHMOND, VA]

## MEMORANDUM OPINION

This is an action challenging the Social Security Administration's ("SSA") denial of Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") to Plaintiff Angela Fowler ("Plaintiff"). This matter is before the Court on the Report and Recommendation ("R&R") of the United States Magistrate Judge (ECF No. 17) as to the party's cross-motions for summary judgment (ECF Nos. 13, 16), filed pursuant to 42 U.S.C. § 405(g). The R&R recommends that this Court affirm the SSA's decision. Plaintiff filed objections to the R&R (ECF No. 18), the SSA has responded (ECF No. 19), and the Plaintiff has replied (ECF No. 20). The Court dispenses with oral argument because it would not materially aid the decisional process.

For the reasons set forth herein, Plaintiff's objections will be overruled and the R&R will be adopted as the opinion of the Court. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 16) will be granted; Plaintiff's Motion for Summary

Judgment (ECF No. 13) and Motion to Remand (ECF No. 14) will be denied; and the decision of the SSA will be affirmed.

## I. BACKGROUND

Plaintiff is a 38-year-old high school graduate who has completed two years of college. (R. at 228.) She has reported being unable to work due to her disabilities since February 3, 2007, before which she was self-employed as a baby-sitter. (R. at 192.) However, Plaintiff did work for a short time in 2008 as a registrar in a hospital. (R. at 228.) Prior to this action, she had previously applied for DIB in April of 2008. (R. at 66.) That application was ultimately denied, and the decision became final on July 23, 2010. (R. at 81.) Plaintiff reapplied for DIB and for SSI in November of 2011, claiming her disabilities precluded her from working as of July 24, 2011. (R. at 17.) Plaintiff has been diagnosed and suffers from fibromyalgia, asthma, obstructive pulmonary disease, obesity, and affective disorder, and anxiety disorder, and osteoarthritis of the bilateral knees. (R. at 19.)

### A. Plaintiff's Medical History

Treatment notes from July 2010 to November 2011 show that Plaintiff has several physical and mental impairments that affect her day-to-day life. Physically, she suffers from osteoarthritis, obesity, fibromyalgia, and asthma. (R. at 19, 85, 114.) These impairments allegedly hinder her mobility, ability to complete some routine tasks, and cause her chronic pain. (R. at 85.) A review of her medical records indicates that, while she has exertional limitations, she is able to stand and move without assistance. (R. at

2

85–89.) Additionally, there is no indication that she is prescribed any regular regiment of pain medication or that she has sought treatment for pain management. (R. at 25.)

Mentally, Plaintiff suffers from anxiety and affective disorders. (R. at 86.) These disabilities affect Plaintiff's social skills and ability to concentrate. (R. at 86.) Medical examinations reveal that Plaintiff has responded well to treatment, with the effects of her disorders becoming less and less prevalent. (R. 85–86.) An assessment of these impairments and her medical treatment history concluded that Plaintiff's physical disabilities limit her to light work and her mental disabilities confine her to simple, routine tasks. (R. at 85, 114.)

**B. Procedural History**

Plaintiff applied for DIB and SSI under the Social Security Act ("Act") on November 9 and 30, 2011, respectively, alleging disability from panic disorder, depression, anxiety, obesity, arthritis, fibromyalgia, hyperinsulinemia, hypothyroidism, and sleep apnea, with an alleged onset date of July 24, 2011. The SSA denied Plaintiff's claims both initially and upon reconsideration. An Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred in assessing her residual function capacity ("RFC"). (Mem. in Supp. of Pl.'s Mot. for Summ. J. (ECF No. 15) at 22–28.) The matter was referred to the Magistrate Judge for a R&R, pursuant to 28 U.S.C. § 636(b)(1)(B), on cross-motions for summary judgment. Finding that the ALJ had committed no errors in

3

his decision, the Magistrate Judge recommended that Plaintiff's Motion for Summary Judgment (ECF No. 13) and Motion for Remand (ECF No. 14) be denied, that Defendant's Motion for Summary Judgment (ECF No. 16) be granted, and the final decision of the Commissioner be affirmed.

Plaintiff now objects to the R&R claiming that the Magistrate Judge erred in three ways. (Pl.'s Objs. at 1, 7, 9.) First, Plaintiff contends that the R&R erred by finding that the ALJ conducted a proper function-by-function analysis when conducting an assessment of Plaintiff's RFC, as required by Social Security Ruling ("SSR") 96–8p. (Pl.'s Objs. at 1.) Second, Plaintiff argues that the R&R erred by finding that the ALJ accounted for *Mascio* [*v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015)] mental limitations in the residual functional capacity ("RFC") assessment and hypothetical questions to the Vocational Expert ("VE"). (Pl.'s Objs. at 7.) Third, Plaintiff posits that the R&R erred by finding her treatment sources' opinions were not entitled to greater weight. (Pl.'s Objs. at 9.) These errors, Plaintiff contends, require remand to the SSA for reconsideration of her claims.

## II. STANDARD OF REVIEW

This Court reviews *de novo* any part of the Magistrate Judge' R&R to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). A reviewing court may accept, reject, or modify, in whole or in part, the Magistrate Judge's recommended disposition. *Id.* When reviewing the SSA's final decision regarding disability benefits, this Court "must uphold the factual finding of the ALJ if they are supported by substantial evidence and were reached through application of the correct

4

legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson*, 434 F.3d at 653. In other words, substantial evidence requires more than a scintilla, but less than a preponderance of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). If the SSA's decision is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## III. ANALYSIS

Plaintiff raises three objections to the R&R. Accordingly, this Court will limit its analysis to those issues. *See United States v. George*, 971 F.2d 1113, 1117 (4th Cir. 1992) ("[T]he court . . . shall make a *de novo* determination of *those portions* of the report or *specified* proposed findings or recommendations to which objection is made.") (emphasis added) (citation and quotation marks omitted). Plaintiff contends that: (1) the R&R erred by finding that the ALJ conducted a proper function-by-function assessment in formulating her RFC, (2) the R&R erred by finding that the ALJ adequately accounted for Plaintiff's mental limitations in the RFC and hypothetical questions, and (3) the R&R erred by finding that the opinions of Dr. Seo and Ms. Poythress were not entitled to great weight. (Pl.'s Objs. at 1, 7, 9.) For the reasons stated below, this Court finds that the Magistrate Judge made no factual or legal errors when recommending that the ALJ's

decision be upheld, and thus, the Court will adopt the R&R and affirm the ALJ's decision.

### A. The ALJ Conducted a Proper Function-by-Function Analysis in Assessing Plaintiff's RFC, as is Required by SSR 96–8p

Plaintiff contends that the ALJ erred by not performing a proper function-by-function analysis when assessing Plaintiff's RFC. She argues that SSR 96–8p and the Fourth Circuit Court of Appeals' decision in *Mascio* require a "narrative discussion describing how the evidence supports each conclusion [about Plaintiff's physical and mental abilities and/or limitations], citing specific medical facts (e.g., laboratory findings and nonmedical evidence (e.g., daily activities, observations)." (Pl.'s Objs. at 1 (citing *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015).) Plaintiff contends that "the ALJ provided no narrative discussion at all." (Pl.'s Objs. at 3.) Indeed, she states that the ALJ failed to explain his reasons for finding that she was able to perform certain functions at a light exertional level, and that evidence in the record—namely, Plaintiff's own testimony—conflicts with the conclusions that the ALJ reached. (Pl.'s Objs. at 4.)

Plaintiff's arguments are unpersuasive and misconstrue the requirements of SSR 96–8p and the holding of *Mascio*. The SSA defines RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and describe the

6

maximum amount of each work-related activity that the individual can perform based on the evidence available in the case record. *See id.* (footnote omitted). When assessing the claimant's RFC, "the ALJ must consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware including those not labeled severe." *Mascio*, 780 F.3d 632 at 635 (quoting 20 C.F.R. § 416.945(a)(2)). The ALJ then uses that RFC determination to determine whether a claimant can return to their past work.

SSR 96–8p explains that, in assessing a claimant's RFC, the ALJ must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id.* at 636. Only after the function-by-function analysis can the ALJ express the claimant's RFC in terms of exertional levels of work — sedentary, light, medium, heavy, and very heavy. *Id.* (citing SSR 96-8p). The ALJ must include "a narrative discussion describing how the evidence supports each conclusion . . . ." *Id.* However, the Fourth Circuit Court of Appeals explicitly rejected a *per se* rule requiring remand when an ALJ does not perform an explicit function-by-function analysis. Rather, "'[r]emand *may* be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis *frustrate meaningful review.*'" *Id.* (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (emphasis added). Thus, Plaintiff's apparent insistence that the ALJ's decision conform to some rigid formula is without merit.

In this case, the ALJ adequately assessed Plaintiff's capacity to perform relevant functions by taking into consideration and assigning respective weight to all the pertinent

7

evidence in the record. Moreover, the ALJ's decision and the narrative discussion of his conclusions do nothing to frustrate meaningful review. Indeed, the ALJ's narrative discussion spans nearly six pages and carefully details the exertional level of work that Plaintiff can complete, Plaintiff's relatively limited history of medical treatment, the medical and nonmedical evidence that was considered in reaching his conclusions, and why any such evidence was afforded greater weight over other evidence in making his decision. (R. at 22–27.)

For example, and with respect to the conclusion that Plaintiff is able to "stand/walk/sit up to 6 hours in an 8 hour workday with normal breaks," the ALJ expressly recognized and afforded great weight to the DDS medical consultants who reviewed the case and opined that "the claimant is able to perform light work[1] with no climbing of ladders/ropes/scaffolds [and] occasional climbing of stairs/ramps, balancing, stooping, kneeling, crouching, and crawling . . . ." (R. at 26.) In explaining why he afforded these opinions great weight, the ALJ stated that "[the opinions] are balanced and objective and consistent with the credible evidence of record." (R. at 26.) And indeed, the ALJ found these opinions balanced, objective, and consistent only after reviewing and discussing Plaintiff's medical-treatment history at length — highlighting the inconsistencies between Plaintiff's testimony and objective medical evidence. (R. at 23–

---

[1] "Light work" is partly defined as "requir[ing] a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

8

25.) This analysis, which was duplicated across the various relevant functions[2], clearly comports with the demands of SSR 96–8p and *Mascio*.

The overarching flaw in Plaintiff's argument is her reliance on her self-reported symptoms and their intensity to attack the ALJ's analysis — contending that the function-by-function analysis was improper because it doesn't explain why Plaintiff can work at a certain level despite her own contradictory conclusions. For example, Plaintiff contends that the ALJ's analysis was insufficient because he does not explain how she can function for an entire workday given the fact that "the ALJ expressly found that [Plaintiff] can 'maintain attention for 30 minutes at a time.'" (Pl.'s Objs. at 4.) However, neither the ALJ's assessment nor medical evidence in the record supports the contention that Plaintiff can maintain attention for *only* 30 minutes at a time. Rather, that conclusion comes from Plaintiff's self-completed application for DIB and SSI benefits.[3] (R. at 249.) To that end, the ALJ expressed multiple times in his decision that the testimony offered by Plaintiff and her mother concerning "the intensity, persistence, and limiting effects of [Plaintiff's] symptoms are not entirely credible" and that they were contradicted by the objective medical evidence in the record. (R. at 25.) Accordingly, to the extent that any contradictions exist between the self-reported intensity of Plaintiff's symptoms and the

---

[2] The R&R explains, in great detail, the narrative analysis and evidence that formed the ALJ's conclusions as to each relevant function and thus, because this Court will adopt the R&R in its entirety, it is unnecessary to repeat that explanation here. *See* R&R at 7–10.

[3] While it is true that the ALJ listed this self-described limitation in section 4—where the severity of mental limitations is assessed to determine what statutory category they fall under: Appendix 1, paragraph B, or paragraph C of 20 C.F.R. § 404(P)—the ALJ expressly stated that "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment." (R. at 21.)

medical evidence in the record, the ALJ properly discussed why he afforded Plaintiff's testimony lesser weight than the objective medical evidence.

Furthermore, as the Magistrate Court properly recognized, even if there was some deficiency in the ALJ's function-by-function analysis, it would not necessarily *require* remand. *See* R&R at 10 (citing *Mascio*, 780 F.3d at 636). Indeed, the main principle underlying *Mascio's* holding is that there must be enough analysis in the ALJ's decision such that it does not frustrate "meaningful review." *Id* at 11. The ALJ's analysis in this case does not frustrate this Court's ability to conduct a meaningful review.

In sum, the ALJ's decision in this case consisted of a function-by-function analysis that addressed all of the relevant functional operations necessary to adequately assess Plaintiff's RFC. The narrative discussion that attended that analysis was thorough and adequately explained, using both medical and nonmedical evidence in the record, Plaintiff's ability to work, and the limitations on that ability. To whatever extent the ALJ's decision does not reach the level of specificity or formulaic construction Plaintiff argues is required, it is this Court's opinion that remand is not necessary because the ALJ's analysis did not frustrate meaningful review. Accordingly, because the ALJ conducted the proper analysis required by SSR 96–8p and *Mascio*, Plaintiff's first objection to the R&R is overruled.

### B. The ALJ Properly Accounted for Plaintiff's Mental Limitations in the RFC and Hypothetical Questions

With her second objection, Plaintiff argues that the ALJ did not adequately account for her mental limitations when conducting the RFC assessment or when

hypothetical questions were posed to the Vocational Expert ("VE") to determine what work, if any, Plaintiff could do in light of her limitations.[4] (Pl.'s Objs. at 8.) Plaintiff contends that, because "the ALJ found that [Plaintiff] can 'maintain attention for 30 minutes at a time,'"[5] limiting Plaintiff to "simple, routine, and repetitive tasks, in a low stress work setting" and "not [being] able to work more than 2 hours at a time without at least a brief break after working 2 hours" in her RFC inadequately addressed her mental limitations. (Pl.'s Objs. at 8.) Plaintiff asserts that remand is necessary because this 30 minute limitation was not expressly mentioned in both the RFC and hypothetical question. (Pl.'s Objs. at 7–8.)

Plaintiff's argument again fails by relying solely on her own testimony, which was found not to be entirely credible by the ALJ (R. at 25), to create a contradiction that she believes warrants remand. However, the record clearly demonstrates that the ALJ's RFC assessment and hypothetical questions were the products of careful consideration of *all* the evidence available. As detailed above, the RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96–8p. The RFC is formulated, and limitations on a claimant's ability to

---

[4] The hypothetical questioning of a VE is part of the fifth step in determining eligibility for SSA benefits. At that step, the ALJ must determine whether, given the claimant's age, education, work experience, and RFC, there is work available in the national economy for such a claimant. 20 C.F.R. §§ 404.1520, 416.920. The burden to show that work exists may be proven by testimony from a VE, who is confronted with hypothetical questions that accurately represent the claimant's RFC and limitations. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

[5] Again, the ALJ did not find that Plaintiff could work for only 30 minutes at a time while assessing her RFC. Rather, that fact was mentioned in a different section that was explicitly "not a residual functional capacity assessment." (R. at 21.)

work added, only after a review of all the evidence (*i.e.*, Plaintiff's testimony, medical-treatment records, DDS consultant's analysis, etc.).

In this case, the ALJ reached his conclusion that Plaintiff should be limited to "simple, routine, and repetitive tasks, in a low stress work setting" and "not [being] able to work more than 2 hours at a time without at least a brief break after working 2 hours" after reviewing Plaintiff's testimony, the medical-treatment records provided by her physicians, and the analysis of the DDS consultants who reviewed her case. (R. at 22–27.) Having reviewed that evidence, the ALJ stated that "the totality of the evidence fails to substantiate that [Plaintiff's] limitations are of the degree and intensity alleged." (R. at 25.) Despite that finding, the ALJ still placed substantial limitations on Plaintiff's ability to work due to her mental impairments. These limitations included working for no more than 2 hours at a time without a break, "simple, routine, and repetitive tasks," and a low stress working environment. (R. at 22–26.) These same limitations were posed to the VE during hypothetical questioning. (R. at 49–51.) That the ALJ failed to use the exact terms "pace" and "persistence" in his questioning is of no consequence. The RFC and hypothetical questions properly addressed Plaintiff's mental impairments because they took into account a diminished capacity to function at a consistent pace and persistence.

Further, in reaching his conclusion on what limitations were warranted, the ALJ properly gave Plaintiff's testimony—which includes her self-reported ability to pay attention for only 30 minutes at a time—minimal weight because it was

12

contradicted by the objective medical evidence in the record. Indeed, the record is devoid of any support for the proposition that Plaintiff can concentrate for only 30 minutes at a time, beyond her own statement. (R. at 22–25.)

The totality of the evidence revealed that Plaintiff's mental limitations did not preclude her from work and that she has functioned relatively well since her onset date. (R. at 25.) The ALJ's limitations included in Plaintiff's RFC and hypothetical questions, and the factual findings that form their foundation, are supported by substantial evidence in the record. Additionally, those limitations adequately addressed Plaintiff's mental impairments in assessing her RFC and in the hypothetical questioning of the VE. Accordingly, because the ALJ properly accounted for Plaintiff's mental limitations in the RFC and hypothetical questions, Plaintiff's second objection to the R&R is overruled.

### C. The ALJ Made No Error in Affording Dr. Seo or Ms. Poythress' Opinion Little Weight

In her final objection, Plaintiff contends that the ALJ erred in not giving greater weight to Plaintiff's treating sources, namely Dr. Seo and Ms. Poythress. (Pl.'s Objs. at 9–11.) Plaintiff argues that Dr. Seo's opinions were supported by a DDS consultant, Dr. Leslie Montgomery, whose opinion was afforded great weight. (Pl.'s Objs. at 10.) Additionally, Plaintiff asserts that, as Plaintiff's treating physician, Dr. Seo's opinion is superior to Dr. Montgomery's. (Pl.'s Objs. at 10.) Plaintiff also claims that Ms. Poythress, a counselor who treated Plaintiff, should be afforded more deference because the ALJ failed to discredit her opinion with specific evidence. (Pl.'s Objs. at 11.)

When the record contains numerous medical opinions, including those from Plaintiff's treating sources, consultative examiners, or other sources that show consistency with each other, the ALJ makes a determination based on that evidence. 20 C.F.R. §§ 404.1520b(a), 416.920b(a). If the medical opinions conflict with one another or other evidence in the record, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence. 20 C.F.R. §§ 404.1527(c)(2)–(6), (e), 416.927(c)(2)–(6), (e). The ALJ must give a treating source's opinion controlling weight only if it has support from medically acceptable clinical and laboratory diagnostic techniques and does not conflict with other substantial evidence in the record. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). However, the ALJ is not required to accept opinions from treating sources when, for example, they opine on the ultimate issue of the claimant's disability for the purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion conflicts with other evidence or when it otherwise has little support in the record. 20 C.F.R. §§ 404.1527(c)(3)–(4), (d), 416.927(c)(3)–(4), (d).

Plaintiff's Objections to the R&R claim that Dr. Seo's opinion is consistent with Dr. Leslie Montgomery, whose opinion was afforded great weight, and thus, Dr. Seo's opinions should be treated the same or better. However, this argument fails to recognize *which* of Dr. Seo's opinions the ALJ afforded little weight. Indeed, it was Dr. Seo and Ms. Poythress's joint conclusion that Plaintiff "does not appear to be able to work at any level" that was afforded minimal weight, not the factual observations of Plaintiff's conditions. (R. at 355, 25.)

14

Ultimately, it was Dr. Seo and Ms. Poythress' own treatment notes, along with the "longitudinal record" of Plaintiff's medical treatment and the opinions of the DDS consultants that led the ALJ to conclude that the joint conclusion of an inability to work "at any level" was inconsistent with the evidence. (R. at 26.) Although Dr. Montgomery and Dr. Seo may have produced consistent evidence as to Plaintiff's symptoms, their ultimate conclusion on those symptoms' effect on Plaintiff's ability to work were wholly different. (R. at 85–86, 355.) The medical-treatment records indicated, and the ALJ noted in his decision, that Plaintiff had responded well to treatment. (R. at 26.) It was the inconsistency between this progress and the joint conclusion from Plaintiff's treating sources that she could not work at all that led the ALJ to afford the opinions of Dr. Seo and Ms. Poythress diminished weight. (R. at 26.) Thus, because the treating physician's opinion on a question reserved for the Commissioner was inconsistent with substantial evidence in the record, the ALJ properly afforded the opinion minimal weight.

Finally, the ALJ did not err by not giving controlling or great weight to Ms. Poythress' opinions because she is not an "acceptable medical source" entitled to controlling weight, and her opinion letter was not consistent with or objectively similar to her own treatment notes. While counselors such as Ms. Poythress may have their opinion considered by an ALJ, they are not entitled to the controlling weight given to acceptable medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d).

In this case, the ALJ properly identified Ms. Poythress as a non-acceptable medical source. (R. at 26.) He then went on to afford her opinion little weight because it was inconsistent with her treatment notes and the testimony given by Plaintiff. (R. at 26.)

15

For example, Ms. Poythress observed that Plaintiff's medications were working, she could function well with a GAF score of 60, and had clear thoughts, normal speech, and no significant mood, memory, or attention/concentration difficulties. (R. at 26, 314–40.) These observations, as the ALJ noted, are at odds with the opinion that Plaintiff is unable to work at any level. (R. at 26.)

Accordingly, because the ALJ properly assessed the opinions of Plaintiff's treatment sources and afforded those opinions their respective weight based on the totality of the record, Plaintiff's third and final objection to the R&R is overruled.

## IV. CONCLUSION

Substantial evidence supports the ALJ's factual findings, which were fully supported by the record and reached through application of the correct legal standards. Therefore, this Court adopts the Report and Recommendation of the Magistrate Judge in its entirety. Accordingly, Plaintiff's Motions for Summary Judgment and Remand will be DENIED and Defendant's Motion for Summary Judgment will be GRANTED. The final decision of the SSA will be AFFIRMED.

An appropriate Order will accompany this Memorandum Opinion.

                /s/
                Henry E. Hudson
                United States District Judge

Date: Dec. 9, 2015
Richmond, Virginia